Good morning. My name is Lee Phillips and I'm here on behalf of my client, Leland Todicheeney. Mr. Todicheeney, if he were here, would want you to know that in the Navajo culture, his mother, his clan, mother's clan, is Red Bottom people and his father's, paternal father's clan, is Tobacco Clan. And that's very significant in their culture because that's when you meet, one Navajo meets another, it gives the, basically it gives some information to the other person. And ultimately, it was designed, I think, to keep intermarriage within the same clan. Generally speaking, people in the same clan wouldn't normally be involved or married or have children together. So he's 63. He speaks very little English. He is still living in the Tisto area in the southeast portion of the Joint Use Area, or HPL, and now NPL. He's not able to be here today. Where is, I'm sorry, I didn't catch that. Where is he living? He's still living in the Tisto chapter area. Family, as you probably understand, typically two homes, seasonal homes. The HPL home was in the Finger Point Valley, which is where he grew up and was born. And then his family, when they relocated, moved across the fence and are still in the Navajo, Tisto area, but on the Navajo side. And the two issues that we want to ask you to consider today are, one, whether or not my client qualifies under the regulations and statutes for the relocation program. And basically, there's two issues. You may already know these things, but I'd just like to remind you, to qualify for relocation benefits, a person had to be on the HPL in December 22 of 1974, and they had to become a self-supporting head of household by the time they moved off of the HPL. And basically, there are three categories of people who can become head of households. If you're married, if you're a parent, or in this case, Mr. Tonaccini was a self-supporting individual. And by self-supporting, and there's some discussion that's changed at some times, but generally speaking, on the application itself, it indicates that self-supporting would be $1,300 or more annual income. My understanding is that your client did not live in the family household, but in next door, in a separate facility? Yes, sir. Is that right? Yes, it is. Both on the HPL, he lived in his hogan, the traditional housing structure, which was originally his grandparents. And he stayed with his grandmother initially. When she passed, he remained in her hogan, which was a very short distance away from his parents, Leo and Polly. They had a separate structure. When they moved to the Navajo side, he lived in, again, continued to live in a separate structure, a cabin that was close to the relocation home of his parents. Did the hearing officer analyze your client's eligibility for benefits under the understanding that he was in a separate living facility? That was clearly the testimony that was clearly in the record. What I'm asking is, in the determination, did the hearing officers say, because he lived in a separate hogan, if you will, that this is being analyzed based on that? No, I believe that in the hearing officer's decision and in most of the hearing process, they continued to indicate or consider that Leland was in the same home, same home site. But as a matter of fact, he was never in the same home. He lived separately from the time he was 18, or even before he was 18, until now. Could you outline for me, if this case was returned to the hearing officer, what exactly do you think would occur? Because as I understand it, there doesn't seem to be any dispute that there is a lack of documentation, and also no dispute that the hearing officer can take that into account. You argue it can't be a per se determination that they don't qualify based on that only, but they can take that into account. And we have testimony from Mr. Totticini's sister, and I think uncle as well. So what would happen if it went back? What would the hearing officer need to do? Make a finding that Mr. Totticini calculates made X during the relevant period of time, or what would the record need to be developed? One of the most important things I think would need to be developed is all of the testimony from my client and his family was that he worked for approximately three months in the fall at a ranch that was owned by Mr. Emmett Kindle. The other nine months, though, he worked from the time he was 18 until probably now still. Right, but the hearing officer says, well, there was no Social Security, and Mr. Kindle's a contractor, so I think there's no support for that. What I'm trying to get at is I don't understand what, to some extent, even if you were to prevail, what the ultimate point would be, because we know what the evidence is. It's all there. So what would the hearing officer need to do? Need to say, okay, I'm going to reassess this, and I'm going to find, in my view, he made X or something like that? Well, yeah, Judge, there was testimony, as I'm sure you're aware, from my client, from his uncle, as to the amount of money they made on a weekly, monthly basis for the three months every fall that they worked on the ranch. And then my client also testified— And the hearing officer has reasons why he doesn't credit the testimony, some of that we've also talked about the Kindle issue. So what would he, nonetheless, should—are you saying it's his obligation to make a finding of what the actual income was during the relevant period? I think that what we're asking is that the hearing officer consider all of the testimony about income that my client earned. Nine months out of the year, he was doing traditional work of taking care of livestock, farming, hauling water. And it's clear that that evidence was presented. So what is it that the hearing officer didn't consider? He made no determination of how much. I mean, he didn't say my client didn't ever work, but he didn't also reach any conclusion as to what would be reasonable to allow him to be credited for income. Implicitly, I think we can conclude that the hearing officer determined that it wasn't enough. But you're saying he needs to identify a figure? Yeah, if you took the minimum wage or if you took the testimony, my client would have made at least $1,300 for that 1978 to 1980 period. At some level, he seemed to have a question of the credibility and not just the persuasiveness of what was being presented. Because he said if he really worked for this person, this person was under a federal contract, so there's a lot of paperwork. And it would have shown up in the social security records, which it doesn't. And he didn't list it on his application as one of the works that he did. And then he found the sister's testimony not credible because her dates were all over the place. She gave three different dates in the span of about 10 minutes. And then there were similar problems with lining up the dates. Why isn't that enough for a hearing officer to just say, you know, I don't find this to be credible and persuasive? And we review this for substantial evidence. Why isn't that substantial evidence that the burden wasn't carried to establish that this income was earned in that time period? Well, I think largely because the hearing officer's analysis in this case and decision in this case runs contrary to several decades of cases. We've had hundreds and hundreds of these cases. And the common theme is the older people who didn't speak English didn't read English. Oftentimes, we're working jobs, manual labor type jobs where there wouldn't be any documents or any way to record because they're being paid in cash. And that's clearly what... that there has to be documents. It was that this particular employer, given that the work being done was pursuant to that employer's federal contract, that therefore he expected that there would be paperwork. And even if you didn't have the paperwork, it would have shown up in the Social Security records, which it didn't. So there isn't a per se rule. He's looking at the facts of this case and making a judgment why he doesn't find this to be persuasive. And why is that not substantial evidence? Well, again, as I'm sure you're aware of, Susan Crystal, the original counsel for the Relocation Commission, she developed several sort of memorandums which determined or indicated how you would determine income and what would be self-supporting. And she also had a separate one, 1985 and one in 1987. But let me just quickly say before I didn't get back to this. My client never worked as a full-time employee for Mr. Kindle. My client, who didn't speak English, who didn't write English or read English, worked with his uncle three months out of the year in the forest. Mr. Kindle had a giant ranch in Heber, a community in northern Arizona. Mr. Kindle had full-time employees year-round. They had heavy equipment, the testimony was. And he had a contract. One of the things that he did was he had his own property, his own land, but he also had a contract to help thin the forest. And he had full-time employees that would go in and cut down trees or they would basically cut most of these trees or clear these areas in the forest. My client worked there for, on a part-time basis, three months out of the year, didn't read or understand English. Both my client and his uncle testified that they never had any, they didn't fill out any applications, they didn't fill out any social security information, tax information. Mr. Kindle paid them with a personal check twice a month. And it's not, it's not even, even today, you know, it's not uncommon that on the reservation and in some of the border towns, there's a large population of Native Americans and Hispanics as well, who work for cash. Many of them work basically manual labor jobs and the construction and they're paid in cash. And that's something that is a benefit to the employer, in many ways, and it's a benefit to the employee. There's, no one is really disputing that, I don't think. Again, as I'm trying to understand what your real gripe is, I don't think it's that the hearing officer didn't consider those things. It's that the hearing officer didn't come to a conclusion that putting all that in the hopper, I say that you're, Mr. Totoceni made $700 during the year or whatever. Is that the problem? That he didn't, he obviously considered all of this because it was presented, but he then didn't come to some conclusion? Well, he didn't consider any of the nine months income that my client earned sheep herding and doing other things for which there would be no documentation. Why do you say he didn't consider it? There was testimony that said that. Yeah. So, it's just that he didn't then articulate that in the order that exactly how much he thought that calculated up to. Well, there was the nine months that my client's testimony was $200 to $300 a month. Doing all the manual labor, wood, all that sort of traditional stuff. And during the three months that he worked, both his uncle and he testified that they made $7 an hour, paid twice a month. The hearing officer doesn't have to accept that because of the credibility issues that he identified. But I guess what's troubling to us is that the hearing officer seems to assume that my client, who was 18, 19, 20, 21 years old, had with a fourth grade education and not able to speak or read or write English, had very limited opportunities, but he had to live some way. He had to support himself. He lived separately from his parents. There was a consistent testimony from him and his uncle and his sister about all of the type of work that he did in the traditional sense in the T2 area. I'm sorry. You want to save a minute for rebuttal? Yes, sir. Thank you. Okay. All right. We'll hear now from Ms. Mishra. I guess he doesn't want to hear the other side. Excuse me. Good morning. May it please the court, Dana Mishra for the United States. For this benefits claim, it's Plaintiff Totacini's legal burden to show he was a self-supporting head of household in June 1980, the stipulated move-off date. The independent hearing officer's IHO's careful, nuanced decision accounted for many factors, not a per se rule, in finding plaintiff and his witnesses not credible and sustaining denial of benefits under the deferential legal standard of review. Did the hearing officer discount the testimony about sheep herding, odd jobs, brush piling, that sort of thing? I believe that the hearing officer made explicit findings about credibility that went to all of the witnesses that included that Leland Totacini when he testified about sheep herding, brush clearing, that sort of thing. Yes, I believe he found that under the burden of proof, it had not been that there was evidence sufficient to meet that burden given that there was not credible testimony from any of the witnesses that extended to that. Activities that occurred 30 years ago, correct? Correct, as Mr. Totacini did not apply sooner. And doing jobs in a culture where there's no written record, sheep herders don't give W-2 statements. Sure, so the reason for discounting it was because the testimony about earnings had been so not credible for all of these reasons of contradictions, inconsistencies. For example, Mr. Totacini's own application said he was only quote self-employed on those tasks, didn't acknowledge anything about, excuse me, the purported work for Mr. Kindle that he later testified to claims he was making quote-unquote big money from, etc. And that kind of question on the application was full-time employment and the work for Kindle, he said, was not full-time. It was just three months out of the year. So doesn't that sort of dissolve the asserted contradiction between the application and his claim that he worked that? I think that no, in the context of this particular application, because the application asked about the full-time and he said off and on. And so he was describing what he did as potentially being full-time. The testimony also as to what he claimed he did with respect to sheep herding, etc., was not full-time. So he was clearly making an affirmative representation that he was only doing that self-employed work that he was listing there. And it was at least reasonable under the very deferential standards of review that apply for the IHO to make that kind of determination given the many extensive contradictions there had been in his testimony. Otherwise, contradictions between the testimony from his various witnesses. And as I was saying, as to the sheep herder testimony, etc., that it was appropriate and reasonable for the hearing officer in light of the fact that there had been this non-credible, inconsistent finding that the attorney had prompted and then Cheryl had changed her testimony, etc., that these types of things were all reasonable things for the hearing officer to take account of when determining that none of the witnesses were credible as to the other testimony as well. Is it reasonable for the hearing officer to say because of these credibility issues, I'm going to conclude it's zero, that he had zero income? And in light of the nature of this part-time work, isn't it pretty indisputable that he earned something? So shouldn't the hearing officer have said even I'm going to discount it with because of these credibility concerns, but ascribe some income to Mr. Totticini so we could determine whether or not it met or did not meet it? And the further aspect of that question is while lack of documentation is, you know, not a per se basis, it's something that can be considered, but it doesn't then say you have no income ascribable. Sure, so let me answer that question. It will take a moment. So the first point is that the hearing officer did not need to find an affirmative figure, and the reason we know this is that it would be inconsistent with the text of the regulations that bind this determination to require the hearing officer to do that. There's two parts of the provisions text that I'd like to for the type of determination being made here that it be a single person who at the time of his or her residence on land partition the tribe of which he or she is not a member actually maintained and supported him or herself. That's an affirmative requirement. That's what needs to be found for those benefits to be something that the person is eligible for. The second provision that is important to take account of is 25 CFR 700.147B, which puts that burden affirmatively on the applicant to prove residence and head of household status. Head of household is affirmative text required in the statute, and so for the hearing officer to be required here to make some affirmative finding about specific amounts of money and what would be credited would be to shift the burden from where it is supposed to lie under the statute and the regulations on the applicant. It's not a burden shifting. Is the hearing officer's decision sufficient to explain the reasoning, not shifting the burden? Sure. It is given extensive reasoning because it has laid out in detail contradictions in the testimony, affirmative non-credibility findings that apply to all the witnesses that were all well-reasoned for the reasons that we can go into if necessary and that your honors have already asked Mr. Totatini's counsel about, and that explanation of finding these contradictions to affirmatively be reason not to credit Mr. Totatini's testimony means that the hearing officer determined not to make an affirmative finding that was not required under the regulations and instead to simply find that the burden was not met here, and that is what is required under the statute and regulations, and requiring something in detail otherwise would be inconsistent with those. Any indication, Judge Hawkins asked the question about that Mr. Totatini, there was some evidence that he lived in a structure separate from his parents' home. In the hearing officer's decision doesn't make any reference to that. So I think it's clear that the hearing officer did know that. The testimony was clear and I do believe that the hearing officer by making the affirmative finding with regard to whether he was a single person self-supporting head of household meant that the hearing officer was already operating in that understanding. It was not a question that the hearing officer relied on some misunderstanding. There's no reason to think that and there's contrary reason to think in the way that the opinion was structured by the hearing officer to think that that was the basis. The basis was instead that even though he was in a separate structure, for example, he was getting food and affirmative work that he was doing was not credible in ways that went really to the heart of what he had claimed. Did he, in his testimony, quantify the amount of money he earned from the sheep herding, the work that wasn't for Mr. Kendall? There was some description purported with respect to those. Yes, I think there was some description. What sort of amounts were those? I think there was a claim that there had might have even been something like $300 for a month for some of these tasks which the hearing officer would have potentially had basis to think was not as plausible in the context of, for example, the affirmative very clear testimony also about the same $300 that didn't mathematically quite work anyway with respect to the work from surges didn't believe him. I think that the hearing officer made affirmative findings, well grounded in the record, that he was not credible as to the testimony about his various work. And, you know, that was reasonable. It was well explained. And that is what is for the court to review here. It's just for those questions. If the court has any other questions, I'd be happy. So I see where he uses the number 300 with respect to being paid $300 every two weeks for Mr. Kendall. So is there a similar $300, $300 a month for the other work? There was testimony that went to that. I can try to find the specific page for you if you need it. But, I mean, I don't know. I don't know. I don't know. I will say that there was contradiction as to the $300 for Mr. Kendall, right? There was slightly different testimony from his uncle about sometimes less, for example. There was also testimony in terms of his calculation, what he said the amounts were that didn't quite match up either. So there were plenty of reasons why, and this were observed, you know, by the hearing officer and his opinion in recounting those why that $300. This requirement, as I understand it, correct me if I'm wrong. Sure. Is $1,300 a year of income or non-income related sources. So to be clear. Is that correct? It's not a requirement. That's the burden of the person seeking benefits to show. The agency has accepted that as to establish a prima facie case. Why do you keep interrupting the questions and not responding to the questions? Is the burden $1,300 of income or related non-income sources? Yes or no? No, because it is more nuanced than that. It is nuanced because the agency has accepted $1,300 as presenting a prima facie case in certain types of circumstances, but not necessarily with respect to the kind of testimony that Mr. Todichini was making here about his work for Mr. Kendall, which wasn't part of that sort of subsistence way of life necessarily. It was something that had expectation that there would be, for example, documentation, that it might be that there would be different amounts. The $1,300 is not what's in the regulations. The regulations burden, say, actually maintained and supported him or herself. And that is the requirement that the agency applies. And the $1,300 has just been, at best, a rule of thumb in particular contexts that don't necessarily always apply here either. I'm going to give you a hypothetical question. A person seeking benefits under this system comes in and says, 30, 35 years ago, I helped with a neighbor who had a herd of sheep. And the way I got paid was that I was given the offspring. So in a given year, I would get anywhere from three to five baby sheep. And I think baby sheeps in those days, if you add all of that up, it would equal $1,300. And that's all the applicant said. What should have happened? But a hearing officer say, where's the paperwork? Where are the W-2s? That determination would be context-specific, as it has been in cases like this one. In this one, you can see that what's relevant here is that in the case-specific evidence of this record, there was expressed testimony, for example, that had internal contradictions, contradictions from others about formal stuff. For example, when Mr. Totticini's counsel makes reference to purported personal check, that's not even the testimony. The testimony, for example, from his uncle was that the check was issued twice weekly, that they cashed it at a place that would let them cash it for groceries. And Mr. Totticini, for example, testified that even Forest Service officials came and observed their work. There were reasons in this case to expect a greater sense of formality about those. So when the hearing officer made a determination that this testimony had problems with it, and that it therefore meant that Mr. Totticini and his witnesses may not be telling the truth, there was good reason to think they weren't in the hearing officer's well-explained reasoning, then there didn't need to be some affirmative finding. It does not have to have any bearing on a case like what you described with respect to those sheets. Don't you think the hearing officer should have said, I think at most this evidence shows that he made X? Isn't it doing a disservice for the hearing officer to simply say, I don't think they carried their burden. I don't think they carried their burden. You lose. Shouldn't, because it doesn't make sense that he made zero. So I don't think the hearing officer has to make an affirmative finding about the amount, because that's not what the regulations say. So whether it would be good practice. But we don't know now whether or not, it wouldn't make any sense to me if the hearing officer's conclusion was, I don't believe you, so I don't think you made a dime. I don't think that would be reasonable. Should I at least know if that's what he concluded? Or if he concluded, I think he made $300 over the year, that's not enough. The relevant question is whether he actually, quote, actually maintained and supported himself. The hearing officer was appropriately finding that he did not meet the burden of proof to show he actually maintained and supported himself. That might be an amount that would be $1,300 in certain contexts. It might be a different amount, because as I mentioned, that's not the firm language of the text of the regulation. Shouldn't we know what he's thinking? What the hearing officer is doing? This is pretty bare bones. And for going forward, this doesn't tell us a whole lot. I understand that Your Honor points out that it would be potentially good practice to explain even more. But the standards under administrative law and under the Administrative Procedure Act do not require that. As Your Honors have referred to before, the Substantial Evidence Standard is an incredibly deferential one. It is one that allows the hearing officer, as long as it's reasonably explained, to make this type of conclusion. I see that my time has expired. I'd be happy to answer further questions if you wish. I do have one question. Sure. It's a simple structure process question. How are hearing officers selected? So I believe that, you know, I don't want to quote that inaccurately to you. If it is of key importance to the court, I'd be happy to get that information to you. The follow-up I have, are there other hearing officers other than this individual? So I am not aware of another hearing officer, but that is partly because of the nature of the agency and its size, et cetera. So it's not legally relevant to the reasoning assessment. Hearing officer in this case, has he heard every one of these cases? I am not sure of all the cases that have been before you, so I can't answer that right now. If it is of key importance to the court, you know, but otherwise, if possible, I'd like to rest on the fact that the standard here is for Substantial Evidence, and the hearing officer met that standard. All right, we'll hear a rebuttal from Mr. Phillips. Let me ask, or let me answer some of the questions that the opposing counsel perhaps wasn't aware of. Mr. Murkow is the only hearing officer that has ever heard any eligibility hearing at the Relocation Commission. He's written every hearing decision, and he continues to be the only hearing officer. He's been reversed, as we try to cite in our briefs, many times for his lack of explanation with specific and cogent reasons why he found someone not to be credible. He simply, as in this case, he simply says, my client and the other witnesses' testimony, and this is quoting, he says, are confusing, contradictory, and inconsistent. But he doesn't give you a single example of that, except that he says Cheryl, the sister, was credible, and in fact, she had previously had her own hearing where he found Cheryl credible, and Leland's parents testified at her hearing, and they were both found credible. In this case, he finds Cheryl credible, except for the money issue. And again, the only criticism he really makes of Leroy is that Leroy is old, has trouble remembering exactly when he started working and how long he worked for Kendall. But again, these were jobs that were temporary, three months out of the year for these guys. They had all kinds of jobs. My client was almost always away from his home site because to earn any money, he had to herd sheep, haul water, cut wood for people. My client and his uncle and his sister all were consistent on what is important, and that is, testimony of my client worked for Kendall, they all testified where he worked, when he worked, what kind of work he did for Kendall, and the other people he worked for, and how much money he paid, was paid. So there was no controverting testimony about any of those factors. Both my client and-  I think we have the arguments. The case just argued will be submitted, and the court will stand in recess for the day. Thank you.
judges: HAWKINS, COLLINS, Seeborg